**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

SHAUNPEN ZHOU,

    Plaintiff,

vs.

INTERNATIONAL BUSINESS MACHINES CORPORATION and ARTECH INFORMATION SYSTEMS, LLC,

    Defendants.

No. 15-CV-1027-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.    INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.    PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.    FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.    SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . *3*

*V.    ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

    *A.    Irreparable Harm* . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *B.    Balance of Harms* . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *C.    Likelihood of Success on the Merits* . . . . . . . . . . . . . . . *8*
    *D.    Public Interest* . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*
    *E.    Balance of Equities* . . . . . . . . . . . . . . . . . . . . . . . . *13*

*VI.    CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## I. INTRODUCTION

The matter before the court is Plaintiff Shaunpen Zhou's "Motion to Maintain *Status Quo* When Lawsuit Pending for a Resolution" ("Motion") (docket no. 4).

## II. PROCEDURAL HISTORY

On August 17, 2015, Zhou filed a Pro Se Complaint (docket no. 1). Count I alleges that Defendant International Business Machines Corporation ("IBM") violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, by failing to hire and promote Zhou due to his age. Count II alleges that Defendants IBM and Artech Information Systems, LLC ("Artech") violated the ADEA by subjecting Zhou to discriminatory treatment due to his age. Count III alleges that IBM violated the ADEA by deliberately underpaying Zhou due to his age. Count IV alleges that Defendants violated the ADEA and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to properly document and pay overtime compensation. On October 16, 2015, IBM filed an "Answer and Defenses to Plaintiff's Complaint" ("IBM Answer") (docket no. 9). On October 26, 2015, Artech filed an "Answer and Defenses to Plaintiff's Complaint" ("Artech Answer") (docket no. 14).

On October 2, 2015, Zhou filed the Motion. On November 2, 2015, Artech filed a "Brief in Opposition to Plaintiff's Motion to Maintain Status Quo" ("Artech Resistance") (docket no. 20). On November 3, 2015, IBM filed an "Opposition to Plaintiff's Motion to Maintain Status Quo" ("IBM Resistance") (docket no. 25). On November 5, 2015, Zhou filed a Reply (docket no. 27). No party has requested oral argument on the Motion, and the court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

## III. FACTUAL BACKGROUND

Zhou is a employee of Artech and works in Dubuque, Iowa at the IBM Dubuque Global Delivery Center ("Dubuque Center"). Zhou is sixty-two years of age. Artech is

a third-party contractor for IBM. Zhou works as a system administrator and assists in managing Amtrak's UNIX computer servers. Zhou has been working with Amtrak's account since March 18, 2013.

On September 2, 2015, shortly after Zhou filed the Complaint, he received notification that his regular and overtime wage rates were being modified for a period running from September 5, 2015 through December 31, 2015. Motion at 3, 9. Specifically, his straight time, or regular pay, rate was being reduced from $40.00 per hour to $37.89 per hour. *Id.* His overtime rate was being reduced from $60.00 per hour to $37.89 per hour. *Id.* On September 4, 2015, Zhou received notification that he was "required to reduce and take off for [eighty-eight] hours in [third quarter], 2015." *Id.* at 11. On September 9, 2015, Zhou received a call from an Artech staff member requesting that he acknowledge and accept the new pay rates and advising him that a failure to do so would result in his termination. *Id.* at 3. Zhou "acknowledged receiving the notice, but refused to accept the rate because it violates the law." *Id.* On September 10, 2015, Zhou receive a second notice, directing him to "ignore [the] previous email" and setting his new rates at $37.89 per hour for straight time and $56.84 per hour for overtime. *Id.* at 3, 10.

## IV. SUBJECT MATTER JURISDICTION

The court has original jurisdiction over the claims because they arise under the ADEA and the FLSA. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## V. ANALYSIS

In the Motion, Zhou requests that the court "enter an [o]rder compelling Defendants to reinstate Plaintiff's pay rate, and directing [p]arties to maintain status quo when this case [is] pending . . . resolution." Motion at 1 (emphasis omitted). Zhou views the wage reduction and required furlough as retaliation against him for filing the instant action. *Id.*

3

He requests that the court direct Defendants to reinstate him to his previous rate of pay and take no further discriminatory or retaliatory action against him. *Id.* at 7. IBM and Artech construed the Motion as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a). *See* IBM Resistance at 4 n.1; Artech Resistance at 1. However, Zhou maintains that "[t]he Motion is not seeking [a] [p]reliminary [i]njunction or [t]emporary [r]estraining [o]rder under Rule 65." Reply at 1. Zhou asserts that a preliminary injunction or restraining order must be aimed at the conduct of a specific party. *Id.* Zhou argues that the Motion does not do so because he seeks to enjoin the conduct of all parties to the dispute, including himself. *Id.*

Zhou does not provide, nor is the court aware of, any authority supporting either the distinction for which Zhou argues or the existence of a "Motion to Maintain Status Quo." To the contrary, the substance of the Motion and the relief requested are indicative of a motion seeking a preliminary injunction. "The primary function of a preliminary injunction is *to preserve the status quo* until, upon final hearing, a court may grant full, effective relief." *Kan. City S. Transp. Co., Inc. v. Teamsters Local Union #41*, 126 F.3d 1059, 1066 (8th Cir. 1997) (emphasis added) (quoting *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984)). This is exactly what Zhou seeks in the Motion. *See* Motion at 7; Reply at 1. He seeks to prevent Defendants from taking further adverse employment actions against him. The fact that the Motion also seeks to encompass Zhou's conduct does not change the court's analysis. Zhou is appearing pro se, and pro se pleadings must be construed to present claims within the proper legal framework. *See Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). Because a "Motion to Maintain Status Quo" is not a cognizable motion, and because the Motion appears in substance to be a motion for preliminary injunction, the court will consider the Motion within that framework.

"A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). The court has considerable discretion in ruling on a request for a preliminary injunction. *See Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, 801 F.3d 927, 936 (8th Cir. 2015). To determine whether to grant a preliminary injunction, district courts should consider: "(1) the threat of irreparable harm to the movant; (2) the balance between the potential harm and any harm that granting the injunction will cause to other parties to the litigation; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Sharpe Holdings*, 801 F.3d at 937 (quoting *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 803 (8th Cir. 2003)). "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue." *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006); *see also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) ("At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."). The court will first consider each of these factors and then determine whether the balance of equities supports issuing a preliminary injunction.

### A. Irreparable Harm

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). In order to demonstrate such harm, the moving party must show "that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (internal quotation marks omitted) (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996)). Damages stemming from an adverse employment action must be "genuinely

extraordinary" to warrant injunctive relief. *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). Generally, "[e]conomic loss, on its own, is not an irreparable injury so long as the losses can be recovered." *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013).

In the instant action, Zhou has an adequate remedy at law. The injuries of which Zhou complains are the reduction in his pay rate and a perceived scheme by his employer to force him to quit his job or manufacture cause to fire him. *See* Motion at 5-7. IBM argues that "Zhou has an adequate remedy at law in the form of monetary recovery for his alleged temporary loss of income." IBM Resistance at 6; *see also* Artech Resistance at 4 ("Because legal remedies in the form of backpay and other monetary damages are adequate, there is no irreparable harm present if the [c]ourt does not issue an injunction."). The court agrees. Though it appears that Zhou has suffered a pay reduction, even if that reduction was a result of an illegal practice on the part of Defendants, Zhou can be made whole with a proper award of back pay. *See, e.g.*, *Parrish v. Immanuel Med. Ctr.*, 92 F.3d 727, 735 (8th Cir. 1996) ("Once unlawful discrimination has been found, back pay should usually be awarded in furtherance of the ADEA's goal to 'make whole' persons who suffer loss due to discrimination."). Zhou's pay reduction, whatever the motive, is purely economic loss, which alone is insufficient to establish irreparable injury.

Zhou also fears that this pay reduction is merely the first step toward Defendants "arbitrarily terminating his job." Reply at 2. Zhou argues that this represents irreparable injury because "older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs." *Id.* (quoting 29 U.S.C. § 621(a)). IBM points out that Zhou has continued to work, suggesting his only potential injury is the reduction in wages. IBM Resistance at 6. The court initially notes that Zhou has not been discharged. Even if Zhou were to be terminated, and even assuming an improper or illegal motive for such discharge, the court finds that such harm

is not irreparable, nor is the danger of its occurrence clear or imminent. If Zhou is discharged and prevails on the merits, reinstatement is the preferred remedy for unlawful employment discrimination resulting in discharge. *See, e.g.*, *Salitros v. Chrysler Corp.*, 306 F.3d 562, 572 (8th Cir. 2002). Even where reinstatement is impracticable, Zhou's damages may be mitigated by an award of front pay. *Id.* While reinstatement and front pay are equitable remedies, rather than remedies at law, the court finds that the specter of discharge is insufficient to establish irreparable injury where adequate remedies exist to compensate Zhou for any harm visited upon him. Furthermore, Zhou has advanced no evidence, aside from his own speculation, that his discharge is imminent or even probable. Such speculative damages are insufficient to support granting a preliminary injunction—the mere possibility of remote injury cannot constitute irreparable harm. *See Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) ("The court must determine that a cognizable danger of future violation exists and that danger must be more than a mere possibility."). Accordingly, the court finds that Zhou has not met his burden to demonstrate that he will suffer irreparable harm absent a preliminary injunction. This, by itself, is enough to defeat the Motion. *See Laducer*, 725 F.3d at 882 (noting that "the absence of irreparable injury is by itself sufficient to defeat a motion for a preliminary injunction"). However, the court will proceed to consider the other factors.

### B. Balance of Harms

The balance of harms factor has been described as "the state of the balance between this harm and the injury that granting the injunction will inflict on other parties." *Roudachevski*, 648 F.3d at 705. Zhou argues that "[g]ranting th[e] Motion will not hurt any party" because IBM is such a large corporation that reinstating just one employee's pay rate would have no effect on its cost-saving measures as a whole. Reply at 6. IBM argues that "injunctive relief against IBM could disrupt its cost-reduction efforts or, at a minimum, negatively affect workplace morale." IBM Resistance at 6. Zhou argues that

"no one believes it will positively affect workplace morale [to] cut[] workers' wages." Reply at 6.

The harm that Zhou faces in the instant action is clear—reduced wages from $40.00 to $37.89 per hour for regular pay and $60.00 to $56.84 per hour for overtime pay and the possibility of discharge. The harm that Defendants face is, as IBM argues, potential disruption of cost-reduction efforts. Whether reinstating Zhou's individual pay rate would cripple Defendants' cost-saving strategy is immaterial. If the court were to grant injunctive relief, it would still undermine Defendants' legitimate cost-saving efforts, a harm in and of itself. It stretches the imagination to accept that compelling Defendant to reinstate Zhou's higher pay rate would negatively impact workplace morale. Both parties' harms are financial and both are concerning. However, neither is clearly or necessarily more grievous in magnitude than the other. Accordingly, the court finds that this factor does not weigh strongly in favor of either party.

### C. *Likelihood of Success on the Merits*

In the instant action, the court must consider whether Zhou has a "fair chance of prevailing" on the merits. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008). This element does not "require in every case that the party seeking preliminary relief prove a greater than fifty [percent] likelihood that he will prevail on the merits." *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Instead, "[t]he very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability test," and "an effort to apply the probability language to all cases with mathematical precision is misplaced." *Id*. "It follows that the court ordinarily is not required at an early stage to draw the fine line between a mathematical probability and a substantial possibility of success." *Id*. Only where "there is no chance of success on the merits" will this factor be dispositive and completely bar preliminary relief. *Mid-Am. Real Estate Co. v. Iowa Realty Co., Inc.*, 406 F.3d 969, 972

(8th Cir. 2005). The Eighth Circuit Court of Appeals has indicated that this factor is the most significant factor in the analysis. *See Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013).

Retaliation claims arising under the ADEA that rely on circumstantial, rather than direct, evidence are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See Stewart v. Indep. School Dist. No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Zhou has not advanced direct evidence of retaliation at this stage of the proceedings. Thus, the *McDonnell Douglas* analysis is appropriate. "Under this framework, the initial burden is on the plaintiff to establish a prima facie case" of retaliation. *Stewart*, 481 F.3d at 1043. Therefore, Zhou must demonstrate: (1) that he participated in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection exists between the two. *See Calder v. TCI Cablevision of Mo., Inc.*, 298 F.3d 723, 731 (8th Cir. 2002). An "adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007) (quoting *Wedow v. City of Kan. City, Mo.*, 442 F.3d 661, 671 (8th Cir. 2006)). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for its action. *Stewart*, 481 F.3d at 1043. If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's explanations are pretextual and point to evidence that creates a reasonable inference that the employer acted in retaliation. *Id*.

Defendants argue that Zhou's pay reduction was not retaliatory, but was enacted as part of a company-wide effort to reduce costs. *See* IBM Resistance at 7; Artech Resistance at 2. IBM argues that "all . . . third-party contractors, including Artech and many others, are subject to the same rate-reduction and furlough programs that Zhou seeks to enjoin." IBM Resistance at 7. It contends that, "as even Zhou acknowledges in his Complaint, pay-

rate reductions and furloughs are nothing new for IBM, having been used in past years long before Zhou filed his [C]omplaint in this action." *Id.* It maintains that "Zhou provides zero evidence . . . that IBM's company-wide cost reduction efforts in its . . . business were undertaken in retaliation against Zhou rather than to reduce costs." *Id.* Artech's arguments are similar, contending that Zhou "was never singled out and retaliated against for filing this lawsuit." Artech Resistance at 2.

Zhou recognizes that pay-rate reductions and furloughs have been instituted in the past, but argues that, in each of those instances he had been exempted from the reduction or furlough, or the reduction or furlough had been rescinded before it went into effect. Reply at 5. He suggests that Artech informing him that he would be terminated if he did not acknowledge and accept the reduced pay rate constituted a threat. Reply at 3. He also states that, during his furlough time, he was still required to work on the weekends and was unable to tell customers that he was on furlough. *Id.*

The Eighth Circuit has stated that,

> if an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext and the determinative issue of causation when bypassing the prima facie case analysis leads to clarity in framing the issues under review.

*Stewart*, 481 F.3d at 1043. The court shall bypass the prima facie case analysis in this instance. Artech and IBM have advanced legitimate, non-retaliatory reasons for their actions—legitimate cost-saving efforts. Accordingly, the court will assume that Zhou has established a prima facie case and will address the issues of pretext and causation.

The court finds that Zhou's chance of demonstrating pretext and causation is exceedingly low. IBM has provided the Declaration of Mark Evancho, an IBM employee who "manag[es] the relationships between IBM and the many third-party contractors who supply temporary workers to IBM." Exhibit 1 (docket no. 25-1) at 2. On August 27,

10

2015, Evancho transmitted a memorandum informing many third-party contractors, including Artech, that IBM "was requiring a temporary reduction in the bill rates of their employees for certain work authorizations in IBM's . . . lines of business." *Id.* at 2, 5-7. Artech was authorized to designate certain exclusions and exceptions from the bill rate reduction "based on its business needs." *Id.* at 3. IBM also provided the Declaration of Andrew Sherman, an IBM employee working as the site manager at the Dubuque Center. Sherman Declaration (docket no. 30) at 1. Sherman states that "the pay-rate reduction applies to all contractors who supply temporary workers to IBM[] . . . . Thousands of temporary workers are affected by this action—not just those working at Dubuque, and not just those supplied by Artech." *Id.* at 2. As for the furlough program, Sherman states that furlough "can vary among locations, teams, and individuals, depending on IBM's business needs at the time." *Id.* Sherman views Zhou's allegations of retaliation as "false" and considers "Zhou's assertion that he is being singled out for retaliation [to be] baseless." *Id.* at 3.

Zhou has advanced no evidence directly supporting his claim for retaliation. He has provided a variety of emails from the past wherein Artech exempted him from pay-rate reductions and furlough requirements. *See* Reply Exhibits (docket no. 27-1). But simply demonstrating that he has been exempted from these types of actions in the past does not establish that Defendants' proffered explanations are pretextual. Instead, in order to demonstrate a causal connection between Zhou's protected activity and the employer's adverse action, Zhou must demonstrate that his filing of the suit was the "but for" cause of the pay reduction and furlough. *See Porter v. City of Lake Lotawana*, 651 F.3d 894, 898 (8th Cir. 2011) ("[U]nder federal [age discrimination] law, [a plaintiff] can recover only if [his or] her complaint of discrimination was '*the reason*' for . . . [the adverse employment action]." (emphasis added)). It does not appear from the current record that Zhou's filing of the Complaint was the but for cause of his pay reduction or furlough. It

is true that the pay reduction and furlough occurred soon after Zhou filed the Complaint, which is a consideration that courts may consider as evidence of causation in retaliation cases. *See Lors v. Dean*, 746 F.3d 857, 865-66 (8th Cir. 2014). However, the memorandum from IBM directing Artech and other third-party contractors to reduce bill rates was not issued until after the Complaint was filed. *See* Exhibit A (docket no. 25-1) at 5-7. Zhou may have been exempted from such cost-saving measures in the past, but the mere fact that he was not exempted from this specific directive in this specific time period is not sufficient to establish retaliation. Without further evidence that Zhou is being singled-out in any way, the court finds that Zhou has failed to demonstrate a strong likelihood of success on the merits weighing in favor of preliminary relief. To the contrary, the court finds that Zhou has a somewhat less than fair chance to succeed on the merits. However, because the court does not find that Zhou has *no chance* of success on the merits, the court will not completely foreclose the possibility of relief if the other factors weigh strongly in favor of granting it. *See Mid-Am. Real Estate*, 406 F.3d at 972. Accordingly, the court finds that this factor weighs strongly against granting preliminary relief.

### D. Public Interest

IBM argues that "considerations of the public interest do not support Zhou, a well-paid computer professional whose alleged grievance exists only in his own mind." IBM Resistance at 6. Zhou does not address the public interest factor in the Motion or Reply. He generally asserts that injunctive relief is appropriate because it would serve the policy considerations underlying the ADEA. *See, e.g.*, Reply at 2. However, the burden remains on Zhou to demonstrate that injunctive relief is proper. Zhou does not address this factor in the Motion or Reply. The court declines to give great weight to IBM's conclusory assertion that the public interest does not favor Zhou. Accordingly, the court finds that this factor does not weigh strongly in favor of either party.

### *E. Balance of Equities*

After considering each factor, the court finds that the balance of equities does not favor granting preliminary relief. *See Dataphase*, 640 F.2d at 113. Zhou will not suffer any irreparable injury if the court declines to enter a preliminary injunction and he appears unlikely to succeed on the merits. Additionally, neither the balance of harms nor the public interest weighs strongly in his favor. The court, guided by the notion that preliminary injunctions are an extraordinary remedy, finds that a preliminary injunction is not warranted in the instant action.

### *VI. CONCLUSION*

For the foregoing reasons, the Motion (docket no. 4) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 1st day of December, 2015.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA